## Case No. 5,671.

### GRAHAM et al. v. MASON.

[4 Cliff. 88; 5 Fish. Pat. Cas. 1.][2]

Circuit Court, D. Massachusetts. May Term, 1869.

LETTERS PATENT—INFRINGEMENT—ISSUE—PLEADINGS—DEFENSE.

1. In a suit for infringement of letters patent, the issue tendered by the responding party must be clear and unconditional.

2. The pleading at law or in equity in such cases must be clear, single, and free from evasion.

3. More than one defence may be presented in an answer in equity, but each should be separately and clearly alleged without condition or qualification.

[Cited in Woodbury Patent Planing Mach. Co. v. Keith, Case No. 17,970; Stow v. Chicago, 104 U. S. 550.]

4. The burden is on the complainants, in a suit for infringement of letters patent, to show the infringement.

5. Persons charged as infringers may set up the defence that the patentee was not the original and first inventor of the alleged im-

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by William Henry Clifford, Esq., and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 4 Cliff. 88, and the statement is from 5 Fish. Pat. Cas. 1.]

provement; but, if the suit is in equity, they must allege in the answer the names and places of residence of those whom they intend to prove have possessed the prior knowledge of the thing, and where the same has been used.

6. Such notice is required for the benefit of the complainant to prevent surprise; but an answer does not meet that requirement if it furnishes to the complainant no means of knowing the respondent's theory of the construction of the patent.

Final hearing upon pleadings and proofs. Suit brought [against William Mason] upon letters patent [No. 30,441] for an "improvement in picker-staff motion for looms," granted Edmund H. Graham, October 16, 1860, and reissued October 2, 1866 [No. 2,367]. An undivided half having been assigned to Wanton Rouse, the letters patent were again reissued to complainants May 28, 1867 [No. 2,626]. The object of the improvement was to produce an accurate and sure motion for picker-staffs, by a combination of devices which, while giving great accuracy of motion, so guides and holds the picker-staff as to cause it to operate with the least possible friction and lateral disarrangement or wabbling.

In the accompanying drawing, the left hand figure represents a vertical central longitudinal section through so much of a picker-staff and its appurtenances, embracing said improvements, as is necessary to illustrate the invention.

i i, formed in the bed-piece c c. By this arrangement the rocker (in its reciprocating movement) is kept perfectly true in its bearings by the arm or bar g g, which holds the rocker a a truly in position, in consequence of its long bearing therein; and as the arm or bar g g also oscillates freely upon its journals, h h, which further serve to steady the rocker laterally, the rocker moves with the least possible friction, and with the greatest accuracy, so that the wear and tear is necessarily but very slight. The eyes or bearings i have inclined slots (shown in dotted lines in Fig. 1) cut in them, so as to form ears or open boxes, in which the journals h h are inserted when the parts of the picker-motion are put together. By this means the shaft or arm g, and its journals h, can readily be removed and replaced, and are free to play without liability to work out of their bearings. The rocker a a is retracted by means of a spiral spring, k k, wound loosely around a short shaft, l, and attached at one end to a plate, m, which turns freely on the shaft, l. A strap, n, attached to the plate m, fits over a hook, o, on the under side of the rocker a a. As the spring k k is liable to partially lose its force by the motions of the rocker a a, this contingency is provided for by forming in the plate m a series of holes, p p, into which successively one end of the spring k k is set, as fast as it loses its elastic force, whereby the spring can be set

The right hand figure represents a central longitudinal horizontal section through the retracting spring of the picker-staff and its cylinder. The middle figure is a plan or top-view of Fig. 1. In these figures, a a represent a curved rocker, in the socket b b, of which the picker-staff is to be fastened. The rocker a a plays upon a horizontal bed c c, having a socket, d, through which the shaft of the loom passes in the usual way. The shank e e of the rocker a a is made hollow, or with a suitable box or bearing, f f, into which a shaft-arm or bar, g g, is inserted, which arm, by means of journals projecting each side thereof, has a bearing in the eyes

up at pleasure, and its force graduated, without the necessity of frequent repairing or renewals.

The claims of the original and reissued patents were as follows: Original patent: "The arrangement of the rocker a a, and guiding shaft or bar g g, traveling in suitable journals or bearings, h h, and operating together, substantially as described." Reissue of 1866: "Steadying the rocker of the picker-staff on its bed, by journals, at a right angle to the picker-staff, which journals form its center of motion substantially as described. Also, the journal boxes, with open ears, in combination with the journals that steady the

rocker on the bed." Reissue of 1867: "1. The combination of a rocker of a picker-staff with its bed, by loose journals, projecting each side of the picker-staff, and arranged beneath the picker-staff, substantially as described. 2. In combination with the rocker, the bed, and the journals, the open boxes, substantially as and for the purpose described. 3. In combination with the rocker and its bed, the journal-bearing arm, operating substantialy as and for the purpose specified."

J. E. Maynadier, for complainants.
Benjamin Dean, for defendant.

CLIFFORD, Circuit Justice. Letters patent were granted to the first-named complainant, October 16, 1860, for a new and useful improvement in pickerstaff motion for looms, and the proofs show that the patentee, on February 26, 1861, assigned, set over, and conveyed one undivided half part of his right, title, and interest in the invention to the other complainant. Possessed of the entire interest in the invention, and holding the same jointly, the complainants, on October 2, 1866, surrendered the original letters patent, because the specification was defective, and new letters patent were issued to them, as they allege, for the same invention. Defects still existing in the description of the invention, the complainants, on May 28, 1867, surrendered the letters patent for a second time, and new letters patent were again issued to them for the same invention, but upon an amended specification. Based on these allegations as to the validity of the patent, the charge of the bill of complaint is that the respondent, since the date of the last reissued letters patent, has manufactured, used, and sold, and still continues to manufacture, use, and sell, their patented improvement, as described in the claims of their amended specification. Respondent admits that the original letters patent were granted as alleged, and that they were twice surrendered and reissued, but he denies that they were surrendered on either occasion for the reasons assigned by the complainants. On the contrary, he charges the fact to be that both reissues were obtained with a view to claim what was never invented by the original patentee, and what he never intended to include in the original letters patent.

The answer contained the further allegation: "That if the claims of invention in the specification of the said last reissued letters-patent, bearing date the 28th day of May, 1867, in the bill of complaint recited, shall be so construed as to cover any device or combination found in any of the shuttle motions heretofore made, used, or sold by this respondent, such device or combination so claimed, and each and every of them, were known and used before the alleged invention thereof by the said Edmund H. Graham, and that the following persons had knowledge of

the prior use thereof at the places named, viz." Then followed the names and places of residence of several persons alleged to have possessed the prior knowledge.

Express allegation of the bill of complaint is that the original patentee was the original and first inventor of the improvement in question; and strong doubts are entertained whether the answer is of a character to allow the respondent to introduce proofs to controvert that allegation.

Statement of the answer is to the effect that if the claims of the reissued letters patent shall be so construed as to cover any device or combination found in the shuttle motions made, used, or sold by the respondent, they, and each of them, were known and used before the alleged invention of the complainants. Persons sued as infringers are allowed to put in issue the novelty of the alleged invention; but the issue tendered, whether in a suit in equity or an action at law, ought to be clearly expressed and unconditional, as the letters patent, when introduced in evidence, are presumed to be valid till the contrary is shown, and if their validity is not denied in the answer or notices of special matter, the complainant or plaintiff, as the case may be, if he proves infringement, is entitled to recover. Conditional denials in such cases are not regular, but if the respondent intends to contest the novelty of the invention, his denial in that behalf should be explicit and unqualified.

Pleadings in equity, as well as in actions at law, should be single, clear, and free of evasion. More than one defense may be presented in the answer, but each should be separately and clearly alleged, without any conditions or undefined qualifications. Before it can be ascertained whether the claims of the patent in any given case cover what was made, used, and sold by the respondent, it always becomes necessary to construe the letters patent, and to ascertain what the respondent did make, use, and sell, within the period laid in the bill of complaint.

Persons charged as infringers may set up the defense that the patentee was not the original and first inventor of the alleged improvement, but in that event they must allege in the answer, if the suit is in equity, the names and places of residence of those whom they intend to prove to have possessed a prior knowledge of the thing, and where the same had been used. 5 Stat. 123; Teese v. Huntington, 23 How. [64 U. S.] 10. Such notice is required for the benefit of the complainant, to prevent surprise; but if the answer may properly be framed, as in this case, it will not serve any useful purpose, as the complainant is furnished with no means of knowing what the theory of the respondent is, as to the construction of the patent. Objections, however, on account of such defects in the answer, ought, in general, to be taken by exceptions, as they are the proper subjects of amendment, under special orders; and, in

view of that circumstance, the court has concluded, in this case, to examine the defense upon the merits.

Granted, as letters patent are, by authority of law, they afford to the party holding the legal title a prima-facie presumption that the patentee was the original and first inventor of what is therein described as his improvement. Picker-staffs for looms must vibrate rapidly, in order to drive the shuttles with the requisite frequency; and to avoid, as far as possible, the derangement of the machinery, and the consequent necessity for frequent repairs, it is essential that the vibrations of the picker-staff forward and back should be in a defined plane, without wabbling or lateral oscillation.

Statement of the patentees is that the means employed for that purpose, prior to the invention described in their letters patent, were very defective in the latter particular, and that the object of their improvement is to produce an accurate and sure motion of the picker-staff, by a combination of devices which will so hold and guide the same as to cause it to operate with entire accuracy, and without lateral oscillation, and with the least possible friction. Some reference to the elements of the patented invention must be made, in order that the characteristics of the improvement may be understood. Among other things, the device has a horizontal bed, constructed with a socket, through which the shaft of the loom passes in the usual way. Besides the horizontal bed, it also has a curved rocker and a picker-staff of the description set forth in the specification. The curved rocker also has a socket, and the representation is that the picker-staff is fastened in that socket, but the rocker plays on the bed, and is kept in place in part by the socket in the bed, and in part by the groove formed by the elevations in the sides of the bed opposite the socket. Connected with the rocker, and constituting a part of it, is a shank, which is made to secure the shaft-arm, which is inserted therein, and rests by means of journals projecting on each side of the same in bearings formed in the elevations of the bed as constructed on each side of the socket. By this arrangement, the rocker is kept in its bearings by the shaft-arm, and moves without much friction and with great accuracy. Inclined slots are cut in the bearings, so that the shaft and its journals can be easily removed and replaced, and are free to play without liability to work out of their true position.

Description is also given of the means employed to retract the rocker, but it is not necessary in this investigation to enter into those details. Based on the description of the invention, as more fully given in the specification, the patentees make three claims, in substance and effect as follows: 1. The combination of the rocker of a picker-staff and its bed by loose journals, projecting on each side of the picker-staff, and arranged beneath the picker-staff, substantially as described. 2. In combination with the rocker, the bed, and the journals, the open boxes, substantially as described. 3. In combination with the rocker and its bed, the journal-bearing arm operating substantially as and for the purpose specified.

Evidently, the first claim is merely for a combination, and the court is of the opinion that the other two must be construed in the same way. Suggestion is made by the complainants that the journal-bearing arm is new, but it is not described as such in that part of the specification to which reference was made, and the concluding portion of specification supports the conclusion that the patentees never intended to set up any such pretensions.

They state that the first part of the invention relates to the position of the journals, and that it consists in placing the journals near the socket of the picker-staff, and as near the level of the bed as practicable, because the journals, when placed in that position, will perform their functions to the best possible advantage, and they add that no rocker, so far as they know, was ever before combined with its bed by means of such journals. In describing the second part of the invention, they say it consists in forming the bearings for the journals with such an opening that the journals may be laid in them without liability to work out in the operation of the rocker. Nothing is said about having invented any one or more of the elements of the combination, and it is not perceived that there is anything in the testimony to justify any such theory. Four patents were introduced by the respondent, as showing that the first named complainant was not the original and first inventor of the improvement described in the patent on which this suit is founded, and they will be separately considered in the order in which they were presented at the argument.

Reference is first made by the respondent to the patent of Benjamin Lapham, as supporting the defense that the improvement in question was known and used prior to the alleged invention of the complainant, but it is evident that the two are substantially different in the most essential features of the improvement. Lapham's invention has a bed and a rocker, and they are combined by means of a journal projecting from each, but the respective journals project only from one side, instead of projecting from both sides, as in the complainants' device. Besides, the journals in the former are much shorter than in the latter, and the arm is farther from a horizontal plane. These differences are palpable and substantial, and show that the defense of want of novelty in the complainants' patent is not sustained by anything contained in the Lapham patent. Strong doubts are entertained whether the Lapham invention is operative for any practical purpose; but it

is unnecessary to express any decided opinion upon that point, as it is clear that the two inventions are substantially different in their characteristic features. Next patent introduced by the respondent is that of Daniel Barnum, which was for an improvement in power looms. Like the patent first examined, it had a bed and a rocker, but it has neither journals nor boxes, nor a journal-bearing nor box-bearing arm. Instead of journals, it has a pin projecting from each side of the picker-staff; but it does not turn, and can not, in any legal sense, be regarded as a substitute for the loose journals in the complainants' invention. Stearns' patent, which is the next one to be considered, is substantially the same as that of Barnum, except that he has provided a friction roller to prevent the wear of the pin; but the rocker may move without moving the roller. The pin can not properly be considered a journal, while the friction of the rocker upon the roller is greater than the friction of the roller upon the pin. The latter, to a certain extent, may perform the office of a journal, but the proofs tend to show that the reverse is true after a short use of the mechanism. Properly considered, it has no journals, open boxes, nor a journal-bearing arm, and consequently lacks one of the elements of each of the respective combinations in the patent on which the suit is founded. Extended remark in respect to the patent of Rensselaer Reynolds is unnecessary, as he connected the rocker and the bed by means of a strap, one end of which was attached to the under face of the rocker, and the other in the groove of the bed-piece, in which the rocker plays when the mechanism is in motion. Reynolds' patent also contains a suggestion supposed to embrace the complainants' invention, but it is too ambiguous to be reliable, and if it were less so, it would be insufficient to support the issue presented by the respondent, as there is no proof that any such device was ever made before the original letters patent were granted in this case.

Argument for the respondent also is that the reissued letters patent are not for the same invention as that described in the specification of the original letters patent. Fraud in procuring the reissues is not alleged, and the rule is that, in the absence of fraud, such a defense is not open to one charged as an infringer, except in cases where it appears, by a comparison of the two patents, as matter of law, that the reissued and original patents are not for the same invention. Nothing of the kind appears in this case, and therefore that defense must be overruled.

Complainants allege infringement, and the burden of proof is upon them to sustain the allegation. Witnesses were examined as experts by both parties, but their opinions are opposed in respect to every issue involved in the pleadings. Respondent admits that he has made and sold picker-staff motions for looms, and that he has made and sold

looms containing picker-staff motions within the period laid in the bill of complaint, but he denies that he has made or sold any such, within that period, in imitation or infringement of what is described and claimed in the complainants' reissued letters patent.

Practically, the only question in the case as to infringement is, whether the model exhibited in the proofs as representing the picker-staff motions made and sold by the respondent, is substantially the same, or substantially different, from the mechanism described and claimed by the complainants as their reissued patent, as the respondent concedes that he has made and sold picker-staff motions, so called, corresponding with that exhibit.

Doubtless the main purpose of the mechanism described in the reissued patent was to compel that part of the picker-staff which strikes the shuttle to move in the required plane without wabbling or lateral oscillation; and it is obvious that the device made and sold by the respondent was constructed to accomplish the same purpose in substantially the same way. Attempt is made to show that the means employed are substantially different, but that the court is not able to concur in that proposition. On the contrary, we find that the mechanism of the respondent's device is substantially the same as that described in the specification of the reissued patent, and we are unable to see that the mode of operation is different in any material respect. Some of the elements of the device are different in form, but they are not new, and it is clear that they perform the same functions as the corresponding parts do in the complainants' device.

Both devices have a curved rocker, in which the picker-staff is fastened, and both have a horizontal bed, having a socket through which the shaft of the loom passes in the usual way. In both, the shank of the rocker is made hollow to receive the shaft-arm, and the rocker plays upon the horizontal bed, and the rocker is combined with bed by loose journals, different in form, but performing the same function, in substantially the same way. Arranged, as they are, beneath the picker-staff and each side of the shank, into which the picker-staff is inserted, they prevent the staff from wabbling in the same way, and as effectually as the journals described in the complainants' patent. But the respondent denies that the device made and sold by him contained loose journals, or that he employs such means to combine the curved rocker and the horizontal bed. He admits that he employs the rocker and a bed, and that they are connected or combined; but he insists that he does not employ loose journals to accomplish that purpose.

Supported, as that theory is, by the testimony of the learned and experienced witness, it has received the attentive consideration of the court, but, in our opinion, it can not be sustained, as it is clear that the com-

bination is the same as that described in the complainants' specification; and the particular device in question, although different in form, yet performs the same function as the device employed in the complainants' invention. Infringement depends not so much upon the form of the particular device in question, or upon the name given to it in the specification by the construction, as upon the functions it performs, and it is well-settled law that if one device is employed in a similar combination as another, and performs the same function in the same way, the two are substantially the same, although they may be different in form, and may be known among mechanics by different names.

Much of the difference of opinion between the expert witnesses may be explained by the proper application of this principle; and without pursuing the subject further, suffice it to say that by a careful comparison of the exhibits one with another, aided by the proofs in the case, our conclusion is that the charge of infringement is sustained, and that the complainants are entitled to an interlocutory decree for an account and an injunction.

[For an account of the report of the master, the opinion of the court thereupon, and the entry of the final decree, and appeal therefrom, see Case No. 5,672.]